MILLS, Judge.
Radomski appeals from a workers’ compensation order denying his claim for benefits contending the deputy erred in finding that his injuries did not arise from an accident occurring in the course of his employment. We disagree and affirm.
The deputy’s order in this case has been so well done, we adopt it as our opinion. “3. It was the position of the employer/earrier that the accident did not arise out of and within the course and scope of his employment with his employer since the accident occurred while the claimant was going home from work and the ‘going and coming rule’ would be applicable. The claimant’s response to this defense was that the ‘special errands’ exception to the usual going and coming rule applied, thus making the accident a part of the claimant’s employment status. It was stipulated between the parties that this is the only exception to the usual going and coming rule that the claimant was asserting would apply.
“As an alternate defense, the employer/carrier took the position that even if the claimant was within the course and scope of his employment immediately prior to the accident, he had deviated from such employment at the time of the actual accident, thus precluding the payment of workers’ compensation benefits. The claimant denied that there was or had been any deviation.
“4. The claimant was originally hired by the employer in mid August, 1983, as a bicycle mechanic. He worked regular hours of employment from 10:00 a.m. until 6:00 p.m. five days per week. There were no irregular hours of employment and the claimant was not ‘on call’. All work to be performed by the claimant was inside the employer’s shops and he made no ‘house calls’. He usually took Tuesdays and Sundays off but was ‘flexible’ in this regard depending upon the workload of the employer. If the employer was busy on a particular Tuesday, he would switch to another day.
“5. The employer had two bicycle shop locations. One location was on College Avenue and the other on Thomasville Road in Tallahassee, Florida. For the first several *1347 days of employment, he was assigned to the Thomasville Road location. However, because of his expertise in repairing more sophisticated bicycles, he was assigned to the College Avenue shop. He normally worked at the College Avenue shop but depending upon the workload of the employer, could and would be assigned to the Thomasville Road location. The claimant had gone to the Thomasville Road location with the employer on at least one occasion and had visited there no more than four times. He had also used the welding equipment at the Thomasville Road shop on a bicycle that had been taken in at the College Avenue store. The employer’s business was small with days off and the location of work flexible, depending upon the workload.
“6. Several days prior to the day of this accident, the employer asked the claimant to work at the Thomasville Road location. Because of the Christmas rush, the claimant’s services were needed at that place of business. In addition, the usual mechanic who was working there was off work due to taking exams at the university. As was his usual practice, the claimant went to work on his own bicycle. He did not own an automobile.
“7. The claimant lived on Carolina Street in Tallahassee and on the morning of the accident, he traveled to work on his bicycle using back roads ultimately ending up on Thomasville Road. It was the same route that he would follow on his way home after work. When riding a bicycle, the claimant stated that he would avoid areas where there was heavy vehicular traffic since it was less dangerous. The route that he took to the Thomasville Road location was in a residential area whereas the route that he usually took to the College Avenue shop was a heavy traffic area making it more dangerous to operate his bicycle.
“8. Regardless of whether he traveled to the Thomasville Road store or to the College Avenue store, he always used his own bicycle. The bicycle was not used as a part of his employment. He was not compensated by his employer for transportation to and from work, was not controlled by the employer to and from work, was not paid for this period, and could choose his route to follow without obtaining approval or permission from the employer.
“9. On Tuesday, December 13,1983, the claimant worked all day at the Thomasville Road shop doing what he always did at work, i.e., repairing bicycles. He arrived at his usual working time around 10:00 a.m. and left at approximately 6:05 p.m., shortly after closing time and after his duties on the job had been completed. The claimant recalled coming down Martin Street which is a street running north and south located immediately adjacent to Lafayette Park. Martin Street intersects with Williams Street which runs east and west. The claimant intended to go from Martin to Williams Street and thereafter proceed to his house located on Carolina Street. The location of this intersection from the Thom-asville Road shop is approximately one and one-half miles.
“Rather than going down Martin Street to its intersection with Williams Street, the claimant cut the corner of Lafayette Park. The exact path that he followed is impossible to determine but from examining the area, he had to travel through concrete pilings, down a steep embankment, across a skating track, and down another steep embankment, where he crashed his bicycle resulting in injuries he is now suffering from.
“10. At the time of the accident, the claimant was going home. He was on no mission for the employer and was doing nothing for the benefit of his employer. He did not intend to stop in route home for any reason for the benefit of the employer. He was carrying some personal tools that he owned but this was for his own convenience. The claimant did not intend to work that evening at home. The claimant chose his own route home, although admitting that there were other routes that could have been used to his residence. The claimant ‘cut the corner’ of Lafayette Park, ously on approximately twenty-five occasions. At the point where he crossed the park, there was no roadway for traffic and *1348 there were no bicycle paths to be used by the general public. The area followed by the claimant from his place of business to his home was not used primarily to provide entry and exit to the claimant’s place of employment but rather was a public street and park.
“11. Based on all evidence including the depositions taken, the witnesses who testified, the documentary evidence, and after viewing the scene of the accident, I find that the claimant’s accident in this instance did not arise out of or within the course and scope of his employment with the employer. Following the generally accepted rule, accidents occurring while the employee’s employment. I find that the 'special errands’ exception to that general rule is ee’s employment. I find that the special errands exception to that general rule is not applicable in this instance. There are other exceptions to the general rule but since it was stipulated that this was the only exception that would have any application in this case, this will be the only exception considered by the undersigned.
“12. The leading case that considers the ‘special errands’ exception is Eady v. Medical Personnel Pool, 377 So.2d 693 (Fla. 1979). That case concerned an employee who worked irregular hours who was injured while responding to a call on behalf of the employer. The claimant in that case had responded to a special request, having been placed in an on call status. The accident also occurred after the claimant had worked a regular shift. In that case, the claimant's injuries were considered com-pensable under the ‘special errands’ exception since:
“1. The claimant worked irregular hours.
“2. The employer suddenly contacted the employee to perform a duty after regular hours.
“3. Tlie journey to and from work was substantially a part of the services performed for the employer.
“In this case, the claimant did not work irregular hours, nor was he suddenly contacted by his employer to perform a duty in excess of that which was ordinarily expected of him. The journey to and from the Thomasville Road location may have been slightly longer than the trip to the College, Avenue shop from the claimant’s residence. However, the trip to the Thomasville Road shop was less dangerous than the trip to the College Avenue shop since there was less traffic. The claimant chose to operate his bicycle in an area not intended for vehicular traffic and voluntarily subjected himself to a hazard not otherwise a part of a usual trip to and from work. The journey to and from work by the claimant was not a substantial part of the services performed by the employer. In this case, the trip to and from work created no additional burden on the employee. The claimant did not nor did he intend to do anything for the benefit of the employer while traveling home. He was carrying his own tools but this was not for the benefit of the employer but rather for his own convenience.
“Professor Larson provides in his treatise at Section 16.10, page 4-123, Workers’ Compensation Law, as follows:
‘The special errand rule may be stated as follows: When an employee, having identifiable time and space limits on his employment, makes an off premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.’
“Although the trip to the Thomasville Road location from the claimant’s residence was slightly longer, this created no special hazard to the employee since the trip was in a residential area as opposed to the congested high vehicular area that the claimant passed through while going to the College Avenue shop. The time for making the trip to the Thomasville Road location was not substantially increased over that which the claimant was usually required to travel nor did the trip to the Thomasville Road location create any spe *1349 cial inconvenience or urgency. The trip to and from work in this instance was not an integral part of the services performed by the employee for the employer.
“13. The only possible ‘special errand’ that the claimant could be said to have been on at the time of this accident was that he was working at a location where he ordinarily did not work and was working on a day that he ordinarily took off. However, I specifically find that it was not unusual or an activity not contemplated under the terms of his employment contract for the claimant to work on Tuesday or work at the Thomasville Road location. The claimant according to his agreement with the employer would be flexible in the days that he worked and the location of his work. Even had it not been contemplated that the claimant would not work on Tuesdays or not work at the Thomasville Road location, this would not convert the claimant’s trip home in this instance to a ‘special errand.’ Tampa Ship Repair & Drydock Co. v. Young, 421 So.2d 706 (1st DCA 1982). There was no evidence of an implied agreement on the part of the employer shown by the course of business, that going to or coming from work fell within the sanctuary of employment and resulted in an entitlement to workers’ compensation benefits. Gray v. Dade County School Board, 433 So.2d 1009 (1st DCA 1983).
“14. I have observed the candor and demeanor of all witnesses who testified before me and have resolved all conflicts.
“WHEREFORE, it is ORDERED that the claim herein filed by ERIC RADOMSKI against the GREAT BICYCLE SHOP, INC. and SAFECO INSURANCE COMPANY is herewith denied and dismissed with prejudice. Since I have found that the accident did not arise out of the claimant’s employment, I have made no determination as to whether the claimant deviated from his employment when he left the roadway to follow a path not ordinarily followed in the normal course of travel.”
JOANOS and BARFIELD, JJ., concur.