14 P.3d 897 (2001)
Benjamin Lee BREEDLOVE, a married man and on behalf of his children, Ashlee Breedlove and Brittany Breedlove, Appellants,
v.
Donald Douglas STOUT and Jane Doe Stout, and their marital Community; and Canfor U.S.A. Corporation, an Idaho corporation, Respondents.
No. 45792-6-I.
Court of Appeals of Washington, Division 1.
January 2, 2001.
*898 Tom Resick, Resick, Hansen & Follis, Philip Buri, Brett & Daugert, Jeffrey A. Thigpen, Tario & Associates, P.S., Bellingham, for Appellants.
Stephen G. Skinner, Andrea L. Philhower, Johnson & Martens, Seattle, for Respondents.
AGID, C.J.
When an employee leaves his workplace in his own vehicle after his shift ends, but decides, without his employer's knowledge or direction, to return to work to pick up a work-related manual he intends to study at home, he is not acting within the scope of employment while driving back to his workplace. His employer is therefore not vicariously liable for an accident he negligently causes en route.

FACTS
In late December 1995, after finishing his shift as a supervisor at Canfor USA's lumber reprocessing mill, Donald Stout punched out, drove off the Canfor premises, and then decided to return to the mill. As he crossed over to a gravel turnout on the opposite side of the road, his car struck Benjamin Breedlove's motorcycle. Breedlove hit the car, flew over his motorcycle, and suffered a traumatic brain injury.
Breedlove initially sued only Stout, but then amended his complaint to include a vicarious liability claim against Canfor. This claim alleged that because Stout turned around to retrieve a lumber grading book he intended to study over the Christmas holiday, he was acting in the scope of his employment, and Canfor should assume partial liability for the consequences of his negligent driving. In response to Breedlove's motion for summary judgment on this issue, Canfor filed a cross-motion for summary judgment alleging that when the accident occurred, Stout was not acting on Canfor's behalf because he told police after the accident that he turned around to meet some coworkers to celebrate a birthday.
The trial court concluded that the dispute about Stout's reason for making the negligent turn did not preclude granting Canfor's motion because even assuming Stout had returned to retrieve the manual, the "going and coming" doctrine, which absolves employers from liability for the negligent acts of employees commuting to and from work, applied:[1]
The fact that he's turned around and going back to get the manual because he forgot it really doesn't change anything, and I don't think there's any qualitative difference between going to and from work and getting the manual. He's not doing an errand for the company, and so if the [going and coming] doctrine is alive at all, then I think the defendant's position is well taken. Breedlove appeals the summary dismissal of his claims against Canfor,[2] arguing that "if an employee takes a specific act to further the employer's interest, ending the commute and reintroducing a business purpose, then an employer is vicariously liable for the consequences."

*899 DISCUSSION
Under the respondeat superior doctrine, an employer may be liable for its employee's negligence in causing injuries to third persons if the employee was within the "scope of employment" at the time of the occurrence.[3] Washington's going and coming rule, an outgrowth of the respondeat superior principle, insulates employers from liability for the negligent acts of their commuting employees under the theory that "a workman is not, under ordinary circumstances, in the course of employment while going to or from his employer's place of business."[4] But Breedlove contends that the going and coming rule applies only to "ordinary" commutes and not travel that serves the dual purposes of employer and employee. He argues that Stout's attempt to get his grading book was "an unusual circumstance, serving Canfor's business purpose, outside the normal confines of his trip home." We disagree. Even assuming Stout turned around to retrieve the manual, the going and coming rule still applies to insulate Canfor from liability for Stout's negligence en route.[5]
Both parties cite Dickinson v. Edwards[6] to support their arguments. In Dickinson, an employee became intoxicated at an employer-sponsored holiday banquet and, after leaving the banquet, struck a motorcycle while driving the wrong way on a freeway ramp. In considering whether to hold the employer vicariously liable, the Washington Supreme Court reiterated the general respondeat superior rule and articulated the test for determining whether an employee is acting in the course of employment:
whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or, as sometimes stated, whether he was engaged at the time in the furtherance of the employer's interest.[[7]]
But instead of "damaging the `going and coming' rule" by carving out an exception tailored to the facts before it, the court chose instead to "set forth a new application of the doctrine of respondeat superior" that applies specifically to banquet-hosting employers.[8]Dickinson, then, is not particularly helpful in defining the scope of the going and coming rule in Washington because it simply preserves its traditional formulation.
Dickinson does, however, recognize "several exceptions"[9] to the traditional rule. One exception, set forth in Aloha Lumber Corp. v. Dep't of Labor & Indus.,[10] is that "a workman is in the course of his employment while going to or from work in a vehicle furnished by his employer as an incident to his employment pursuant to custom or contractual obligation, either express or implied." And in Lang v. Dep't of Labor & Indus.,[11] Division Two endorsed the special errand exception. Under this exception, a service for the employer is within the scope of employment if "the time and trouble of performing the special service [is] so substantial that it constitutes an integral part of the service itself." Lang also recognized that there is a "benefit to employer" exception, which applies when "the trip involves an incidental benefit to the employer, not common to commuting trips by ordinary members of the work force."[12] Washington *900 courts have not applied either of these exceptions to facts similar to those here.[13] But jurisdictions with a going and coming rule similar to ours have developed considerable precedent on the issue of imposing liability on an employer whose employee negligently causes an accident while returning to work in his or her own vehicle.[14] We find those cases instructive.
In Pierce v. Ellis,[15] the Louisiana Court of Appeals applied the going and coming rule to a nearly identical situation. In that case, an employment agency personnel supervisor compiled a list of persons qualified for a position that needed to be filled the following morning. She planned to review the list and call the qualified people from her home that night. On her way home from work she realized that she had forgotten the list and decided to return to her office to retrieve it. On the way, she rear-ended another car. The court held that she was not in the scope of employment when the accident occurred, and that no exception to the going and coming rule applied:
The only reason that she was driving at all at the time was to go home, as usual; en route there, she remembered she had forgotten the list she wished to work on at home, so she returned to the office to obtain it, again for her own personal convenience. Her traveling at the time was no more employment-connected than at any other time when she was on her way to work or going home. The fact that [her employer] might benefit eventually by the work she planned to do at home was purely incidental to and not connected with her traveling. Her trip at the time was not contemplated by [her employer] and the accident cannot be regarded as a risk of harm fairly attributable to [the employer's] business.[[16]]
This reasoning is logical, and it applies with equal force to this case. In his deposition, Stout stated that he sometimes studied in the mill but decided on the night of the accident to take the lumber grading manual home because he "want[ed] to know as much as [he could]." As in Pierce, although Stout's studying could ultimately benefit Canfor, his trip back to work, by itself, was neither at Canfor's request nor sufficiently connected to his employment as a lumber mill supervisor to implicate the employer in the consequences of his negligent driving.
Faced with a similar factual scenario, the Oregon Court of Appeals reached the same result as the Pierce court. In Runyan v. Pickerd,[17] a store manager caused an accident while traveling to his workplace on his day off to perform work-related duties. The accident victim asserted a vicarious liability claim against the manager's employer. She argued, as Breedlove does here, that the going and coming rule does not apply because the manager's trip "was not undertaken for the purpose of ordinary `commuting'"[18] and alternatively, that "the journey *901 comes within the `special errand' exception"[19] to the going and coming rule. The Oregon court perceived "little difference" between these alternative arguments. It observed that their "common premise" is that the employee was "outside the rule and within the exception, because he was driving to the store at a time when he was not required by his employer to be there and because he was going there to attend to matters which he perceived as being too pressing to await usual work hours."[20] After noting that the "only thing extraordinary about [the manager's] trip from home to workplace is that it occurred on a day when he did not have to go to work," the court held that "that is not enough to differentiate the trip from ordinary commuting."[21]
We are not persuaded by Breedlove's reliance on Tuttle v. Muenks[22] and Wade v. Berkeley County[23] to support his argument that the dual purpose doctrine applies here. In Tuttle, an employee caused an accident while driving to his office to pick up his paycheck and drop off delivery receipts. Based on the employee's statement that he dropped off paperwork every Friday night, and that his employer expected him to do so, the Missouri Court of Appeals reasoned that a jury could conclude that he was driving to work, at least in part, for the benefit of his employer. Tuttle is distinguishable because there is no indication that Canfor expected, or even knew, that Stout would return to work on the night of the accident to pick up the grading manual. Wade is similarly inapplicable because in that case, the employee, an animal control officer, was on call "24 hours a day, 365 days a year,"[24] and had been instructed by his employer to perform tasks on his way to and from work. The South Carolina Court of Appeals reasonably concluded that a jury could find that he was acting in furtherance of his employer's business when, after stopping on his way to work to check a dead dog for a collar, he collided with a truck.
We agree with Pierce and Runyan, and hold that Stout's trip back to work, undertaken without Canfor's knowledge or control, was functionally identical to commuting and therefore falls squarely within the going and coming rule.[25]
Affirmed.
COX, J., and GROSSE, J., concur.
NOTES
[1] Breedlove sought discretionary review of this order, but a commissioner of this court denied the motion and dismissed the appeal pending resolution of Breedlove's claims against Stout.
[2] Breedlove has settled with Stout.
[3] Dickinson v. Edwards, 105 Wash.2d 457, 466, 716 P.2d 814 (1986).
[4] Aloha Lumber Corp. v. Dep't of Labor & Indus., 77 Wash.2d 763, 766, 466 P.2d 151 (1970).
[5] Where there can be only one reasonable inference from undisputed facts, the issue of scope of employment may be resolved at summary judgment. Strachan v. Kitsap County, 27 Wash.App. 271, 274-275, 616 P.2d 1251, review denied, 94 Wash.2d 1025 (1980).
[6] 105 Wash.2d 457, 716 P.2d 814.
[7] Id. at 467, 716 P.2d 814 (quoting Elder v. Cisco Constr. Co., 52 Wash.2d 241, 245, 324 P.2d 1082 (1958)) (emphasis omitted).
[8] Id. at 468, 716 P.2d 814.
[9] Id. at 467, 716 P.2d 814.
[10] 77 Wash.2d at 766, 466 P.2d 151. See also Westinghouse Elec. Corp. v. Dep't of Labor & Indus., 94 Wash.2d 875, 880, 621 P.2d 147 (1980).
[11] 35 Wash.App. 259, 262, 665 P.2d 1386, review denied, 100 Wash.2d 1021 (1983).
[12] Id. A New York court distinguished the "special errand" exception and the "dual purpose" exception as follows:

[T]he special errand exception may be invoked when an employee, travelling to or from home, has engaged in a work-related errand. The dual purpose exception may apply when an employee is injured in transit to or from a location off the employer's premises when the employee's presence at that location served both a business and personal purpose.
Neacosia v. New York Power Auth., 85 N.Y.2d 471, 476 n. *, 626 N.Y.S.2d 44, 649 N.E.2d 1188, 1190 n. * (1995).
[13] At oral argument, Canfor indicated that Elder v. Cisco Constr. Co., 52 Wash.2d 241, 324 P.2d 1082, applies directly to these facts. But in that case, the court held that the employer of several men who ended their shift, became intoxicated in a tavern, and hit the plaintiff en route to their workplace was not vicariously liable for the plaintiff's injuries because, among other things, the men were "free to do as they pleased" after their shifts ended. Id. at 246, 324 P.2d 1082. Here, we assume for summary judgment purposes that Stout was returning to work solely for a work-related purpose.
[14] See Christopher Vaeth, Annotation, Employer's Liability for Negligence of Employee in Driving His or Her Own Automobile, 27 A.L.R.5th 174 (1995).
[15] 519 So.2d 251 (La.App. 5 Cir.1988).
[16] Id. at 254.
[17] 86 Or.App. 542, 740 P.2d 209, review denied, 304 Or. 279, 744 P.2d 1003 (1987).
[18] Id. at 210. Danielle Breedlove also argues that the going and coming rule does not apply because Stout was not "going to work ." He had just finished his shift, and, she asserts, "[h]is movements at the time of the collision with Breedlove were not an inevitable and unavoidable occurrence attendant with his employment, i.e. getting to or from work but, instead, were taking place to serve his employer's interest and, therefore, do not fall within the going-and-coming exception." This argument does not acknowledge that the exceptions to the going and coming rule necessarily address circumstances that fall outside the rule.
[19] Id.
[20] Id.
[21] Id. at 211-12. As one rationale for its decision, the court stated that the going and coming rule should not be applied as liberally to attach vicarious liability to employers as it is to ensure that injured workers obtain compensation.
[22] 964 S.W.2d 514 (Mo.App. 1998).
[23] 330 S.C. 311, 498 S.E.2d 684 (Ct.App.1998).
[24] Id. at 689.
[25] See also Duff v. Vazquez, 544 So.2d 1124 (Fla.App. 3 Dist.1989). In that case, as here, an off-duty employee who caused an accident on the way to his workplace offered two contradictory explanations for his purpose for returning to work-one social and one work-related. The court held that because the record did not suggest that the employer either sent the employee on any special errand or knew that the employee would be going to the store at that time, summary dismissal of the employer was warranted. A contrary conclusion, reasoned the court, would "allow the question of Defendant's liability to depend on the fluctuating subjective and personal thoughts of the employee/driver over whom the Defendant has no control...." Id. at 1125. We agree that the subjective thoughts of the employee should not control this analysis.